# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| LAURA CORN,<br><br>    Plaintiff,<br><br>v.<br><br>KOHL'S CORPORATION and<br>KOHL'S, INC.,<br><br>    Defendants. | Case No. 25-CV-832-JPS<br><br><br>**ORDER** |

## 1.  INTRODUCTION

In March 2024, Plaintiff Laura Corn ("Corn") sued Defendants Kohl's Corporation and Kohl's, Inc. (collectively, "Kohl's") in Marin County, California Superior Court for violations of California's Unfair Competition Law, CAL. BUS. & PROF. CODE §§ 17200, et seq. ("UCL"), California's False Advertising Law, CAL. BUS. & PROF. CODE §§ 17500, et seq. ("FAL"), and the California Consumer Legal Remedies Act, CAL. CIV. CODE §§ 1750, et seq. ("CLRA"). ECF No. 1-1. After removal to the Northern District of California, and a transfer to the Eastern District of Wisconsin, the case is now before this Court for disposition of Kohl's motion to compel arbitration. ECF No. 81.

## 2. FACTUAL AND PROCEDURAL BACKGROUND

### 2.1 Factual Background[1]

This lawsuit stems from Corn's purchase of a decorative pillow from a Kohl's store located at 5010 Northgate Drive, San Rafael, California 94903 on September 30, 2023. ECF No. 1-1 ¶ 37; ECF No. 83-7 at 5, 7. At the time of the purchase, the pillow allegedly had an advertised reference price of $35.99 and advertised sale price of $25.19 ECF No. 1-1 ¶ 38. According to Corn, the pillow "was on sale for at least 85 out of 95 days between August and November 2023, thus demonstrating that the advertised $35.99 reference price was misleading and not the prevailing market price as required by California law." *Id*. ¶ 35. Corn alleges that Kohl's pricing conduct amounts to an unfair business practice under the UCL, a violation of the FAL, and a violation of the CLRA. *Id*. at 14–19.

As the Honorable Charles R. Breyer ("Judge Breyer")—who presided over this case in the Northern District of California prior to transferring it to this Court—noted, the parties do not dispute that Corn does not have her own Kohl's Rewards Account (a loyalty program that Kohl's offers that allows members to earn various discounts) and that when Corn purchased the pillow, she entered her husband's phone number into a keypad, linking her purchase to her husband's Kohl's Rewards Account (the "RA"). *See* ECF Nos. 61 at 1 (citations omitted) and 83-4 at 3. Corn

---

[1]The Court adopts the facts based on Judge Breyer's recitation in his Order transferring the case to Wisconsin federal court. ECF No. 61. The Court also draws facts that the parties have advanced in their briefs for which there is evidentiary support. *See generally* ECF Nos. 82, 87–88. Irrelevant facts are omitted. The deponents' statements, particularly their admissions, also will contribute to this fact section.

admits that she knew her husband had a Kohl's RA and there was no other reason to provide her husband's cell phone number during the September 2023 transaction other than to earn rewards on the purchase.[2] ECF No. 61 at 4 (citations omitted). While using her husband's RA did not impact the price that Corn paid for the pillow, the September 2023 purchase generated $1.01 worth of Kohl's cash for her husband's RA. *Id.* at 1; ECF No. 83-7 at 7.

Although Corn challenges the lawfulness of certain terms, Corn does not dispute that her husband's RA came subject to specific terms. ECF No. 87 at 8 (noting that her "claims are unrelated to the Terms that govern [her husband's RA]"). Those terms came in the form of two agreements, namely the Terms and Conditions ("May 2023 Terms") that apply to those who use the Kohl's site and make in store purchases, and the Kohl's Rewards Member Agreement ("May 2023 KMA"). ECF Nos. 83-6 and 83-5. Each contains its own arbitration provision. May 2023 Terms at 5–9; May 2023 KMA at 5–7. Only the May 2023 Terms contain a choice-of-law provision (Wisconsin). May 2023 Terms at 5. However, the May 2023 KMA requires that members of the loyalty program agree to "**ADDITIONAL TERMS**," which include "Kohl's Legal Notices available . . . on Kohls.com," a

---

[2]Corn has also admitted that she is familiar with other retailers' rewards programs. In the case of Williams Sonoma, for instance, Corn revealed that her husband puts in her phone number because he does not have a rewards account. ECF No. 61 at 4.

Page 3 of 23

reference to the May 2023 Terms.[3] *See* May 2023 KMA at 5; ECF No. 83-7 at 8 (supporting that "Kohl's Legal Notices" refer to the May 2023 Terms).[4]

In addition, "the [May 2023 KMA] informed Kohl's customers that the terms of the [May 2023 KMA] may be amended from time to time, and that continued participation in Kohl's Rewards thereafter [would] constitute acceptance of all such amended terms." ECF No. 83-4 at 3; *see* ECF No. 83-6 at 5.

### 2.2 Procedural Background

Plaintiff filed this lawsuit in March 2024 in Marin County, California Superior Court. ECF No. 1-1. Kohl's removed the case to the Northern District of California in April 2024. ECF No. 1. In May 2024, Kohl's moved to transfer the case or compel arbitration. ECF No. 7. Judge Breyer denied the motion on the basis that there were "[s]everal questions" about Corn's use of the RA that "remain[ed] unanswered." ECF No. 27 at 1. He thus provided the parties time to conduct a limited round of discovery. *Id*. at 2. In April 2025, once the parties had completed that discovery, Kohl's

---

[3]As discussed later, this is an important provision because it connects the May 2023 KMA to the May 2023 Terms such that the choice-of-law provision applies to anyone who agrees to either document. *See infra* Section 4.2.

[4]The Court also takes judicial notice of the online version of the May 2023 KMA using Wayback Machine, which provides a hyperlink on the words "Legal Notices" that links to the May 2023 Terms. *See* Kohl's Rewards Member Agreement, WAYBACK MACH., https://web.archive.org/web/20231003072442/https://www.kohls.com/feature/rewards-terms.jsp (last visited Mar. 27, 2026); *Hepp v. Ultra Green Energy Servs., LLC*, No. 13 C 4692, 2016 WL 1073070, at *2 n.1 (2016) (citing *Erickson v. Neb. Mach. Co.*, No. 15–cv–01147–JD, 2015 WL 4089849, at *1 (N.D. Cal. July 6, 2015) and FED. R. EVID. 201) (discussing the ability of courts to take judicial notice of items in the Wayback Machine); *see also Pohl v. MH Sub I, LLC*, 332 F.R.D. 713, 716 (N.D. Fla. 2019) (collecting cases doing same).

renewed their motion to transfer or compel arbitration. ECF No. 44. Judge Breyer ordered supplemental briefing to address what law governs the dispute under the terms of the RA. ECF No. 46. In June 2025, after the supplemental briefs were filed, Judge Breyer granted the motion to change the venue. ECF No. 61.

In August 2025, after the case had been transferred to this branch of the court, Kohl's again moved to compel arbitration. ECF No. 81. The motion is now fully briefed, ECF Nos. 82, 87, 88, and for the reasons stated below, will be granted. The Court will compel arbitration and stay these proceedings pending that arbitration. The Court will also grant Corn's motion to restrict certain documents, ECF No. 86.

## 3.    LEGAL STANDARD

The Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1 et seq., "is a congressional declaration of a liberal federal policy favoring arbitration agreements." *Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 730 (7th Cir. 2005) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983)). Accordingly, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." *Id.* at 731 (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25). To further its purpose, "[t]he FAA . . . provides for stays of proceedings in federal district courts when an issue in the proceeding is referable to arbitration, . . . and for orders compelling arbitration when one party has failed, neglected, or refused to comply with an arbitration agreement . . . ." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991) (citing 9 U.S.C. §§ 3 and 4). According to the FAA,

> [a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a

controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract . . . .

9 U.S.C. § 2. "Under the [FAA], arbitration may be compelled if the following three elements are shown: [1] a written agreement to arbitrate, [2] a dispute within the scope of the arbitration agreement, and [3] a refusal to arbitrate." *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005) (citing 9 U.S.C. § 4 and *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909–10 (7th Cir. 1999)).

**4.      ANALYSIS**

According to Kohl's, the only issue before the Court is whether the dispute falls within the scope of the arbitration provision contained in the May 2023 KMA because Judge Breyer has already determined that it was a "valid arbitration agreement" that "applies" to Corn. ECF No. 82 at 10. Corn does not address whether the dispute here is within the scope of the May 2023 KMA's arbitration agreement. *See generally* ECF No. 87. Corn instead argues that Judge Breyer reached the wrong conclusion in holding that Corn is a party or otherwise bound by the arbitration provision. *Id*. at 14–22. Corn further argues that, even if she is bound, the arbitration provision is not enforceable under California law, which she claims governs, because it runs contrary to public policy and is otherwise unconscionable. *Id*. at 22–35.

With that background, the Court proceeds as follows. First, it will detail what Judge Breyer has decided, as that sets the stage for the issues before the Court. *See infra* Section 4.1. The Court will then evaluate which law applies to this case. *See infra* Section 4.2. The Court will examine whether the May 2023 KMA's arbitration provision is a valid agreement.

*See infra* Section 4.3. Normally, the Court would next separately discuss whether the dispute here falls within the scope of that arbitration agreement and whether Corn has refused to arbitrate; however, since Corn does not make any arguments as to these elements, they are only briefly discussed at the end of the validity section. *See infra id.* Finally, in granting the motion to compel arbitration, the Court will address whether to stay or dismiss the proceedings. *See infra* Section 4.4.

### 4.1 Judge Breyer's Findings

As noted, the Court starts by discussing Judge Breyer's findings because, pursuant to the law of the case, they guide how the Court must proceed here. *Cannon v. Armstrong Containers, Inc.*, 92 F.4th 688, 702 (7th Cir. 2024) ("[T]he law of the case doctrine . . . posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." (quoting *Christianson v. Cold Indus. Op. Corp.*, 486 U.S. 800, 815–16 (1988) (internal bracketing omitted) (emphasis omitted))). "This presumption against reopening matters already decided reflects interests in consistency, finality, and the conservation of judicial resources, among others." *Minch v. City of Chicago*, 486 F.3d 294, 301 (7th Cir. 2007) (citing *Analytical Eng'g, Inc. v. Baldwin Filters, Inc.*, 425 F.3d 443, 454 (7th Cir. 2005)).

In transferring the case to the Eastern District of Wisconsin, Judge Breyer reasoned that, under the doctrine of direct benefits estoppel, Corn was bound by the terms of the May 2023 KMA that her husband agreed to because she knowingly accepted and took advantage of its benefits when shopping at Kohl's by "associat[ing] her transaction with her husband's"

RA. ECF No. 61 at 2–5. Accordingly, the forum selection clause therein controlled, requiring transfer to Wisconsin. *Id*. at 5.

Before the Court proceeds with its analysis of the law of the case, however, it will note that, although the parties mention this doctrine, the parties' briefing in this area is wanting. On the one hand, Kohl's argues that Judge Breyer found that the May 2023 KMA's arbitration agreement was valid and binding as to Corn, and, therefore, the doctrine applies such that the only remaining issue is whether the dispute in this case is within the scope of arbitration agreement. ECF No. 82 at 11–12. Meanwhile, Corn argues that Judge Breyer was incorrect in both respects, and, therefore, the doctrine does not apply at all. ECF No. 87 at 14–22. Neither party, however, takes up a more nuanced examination as to what Judge Breyer did and did not decide, leaving that for this Court to parse out. As the Court will explain below, Judge Breyer necessarily found that the Corn is bound the arbitration agreement, *see infra* Section 4.1.1, but did not necessarily find that the arbitration agreement is valid, *see infra* Section 4.2.2.

### 4.1.1 Judge Breyer Found That Corn Is Bound By the Arbitration Agreement

Kohl's contends that Judge Breyer determined that "Corn is bound by the terms of the [May 2023 KMA]—including its arbitration and forum-selection provisions—based on her acceptance of the benefits conferred by that agreement." ECF No. 82 at 11 (citing ECF No. 61 at 3); ECF No. 61 at 3 ("Kohl's designed a program in which customers would agree to become members to receive certain benefits, like Kohl's Cash, in exchange for complying with a set of terms and conditions, like a forum selection clause and arbitration clause."). Corn disagrees, noting that she is not a party to her husband's RA and that there remains a dispute as to whether she ever

benefitted from it, even if her husband's RA accrued $1.01 from her September 2023 purchase. ECF No. 87 at 14–15, 17–18.

The Court will recite the relevant provision here, namely the jurisdiction and venue provision, which appears at the end of the arbitration provision contained in the May 2023 KMA. May 2023 KMA at 7. It reads:

> Unless you and Kohl's agree otherwise, to the fullest extent permitted by law, the state and federal courts that encompass Waukesha County, Wisconsin, shall have exclusive jurisdiction over any disputes (except for claims brought in small claims court) that are not subject to arbitration, that are opted out of arbitration pursuant to this Section XI, or over any action that seeks to enforce or challenge the enforceability of the Arbitration Agreement or any provision of the Arbitration Agreement or these Terms. You and Kohl's consent to the jurisdiction of those courts and waive any objections as to personal jurisdiction or as to the laying of venue in such courts because of (a) inconvenient forum; or (b) any other basis or any right to seek to transfer or change venue of any such action to another court.

*Id*. Judge Breyer stated that he was "satisfied that Corn's husband formed a valid contract with Kohl's . . . and that the forum selection clause in the contract is enforceable." ECF No. 61 at 2 (internal citation omitted). He also concluded that "Corn's husband's [RA] binds Corn." *Id.* at 2. With that background, the Court will begin its analysis of the law of the case doctrine.

The Supreme Court has held that the law of the case turns on whether a court has previously "decide[d] upon a rule of law." *Christianson*, 486 U.S. at 817; *see also Cannon*, 92 F.4th at 702. When determining whether the arbitration clause is binding on Corn, the Court starts by noting that Judge Breyer found that the contract as a whole (the RA, compromised of the May 2023 KMA and the May 2023 Terms) is binding on Corn. ECF No.

61 at 2. To the extent Corn could attack the validity of the RA as a whole, she does not appear to do so, rather only attacking the validity of the agreement to arbitrate, ECF No. 87 at 22–35; *see Buckeye Check Cashing v. Cardegna*, 546 U.S. 440, 444 (2006) (noting that one type of challenge in opposing a motion to compel arbitration is to the validity of the arbitration agreement itself while another is aimed at the contract as a whole (citing *Southland Corp. v. Keating*, 465 U.S. 1, 4–5 (1984))). Thus, the Court is satisfied that the RA, which encompasses the forum selection clause and the arbitration agreement, binds Corn.

This view is further supported by a recent Supreme Court case, which noted that "an arbitration agreement is 'a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute.'" *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 653 (2022) (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974) and citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 633 (1985)). Thus, there is no basis to consider analyzing the jurisdiction and venue provisions separately from the arbitration provision, particularly here where the forum selection clause appears inside the arbitration agreement, nor is there a basis to otherwise conclude that Corn was subject to the forum selection clause but not the arbitration agreement as a whole. The Court thus finds that Judge Breyer necessarily decided that Corn was subject to the arbitration agreement contained in the May 2023 KMA, even though he did not explicitly say so. *See generally* ECF No. 61.

As a general matter, the Court would not consider the issue further— *see Christianson*, 486 U.S. at 817 (noting courts are not take up "whether, or how well, [a prior judge] explained [his] decision" once the successor judge determines that the decision was necessarily made)—however, the Court

will briefly revisit the issue because Corn suggests that Judge Breyer was "clearly incorrect." ECF No. 87 at 16. The Court should only revisit prior decisions in "extraordinary circumstances" which include situations where the prior judge reached a decision that was "clearly erroneous" or otherwise indicative of "a manifest injustice." *Christianson*, 486 U.S. at 817 (quoting *Arizona v. California*, 460 U.S. 605, 618 n.8 (1983)).

In this case, Judge Breyer considered the law on equitable estoppel, citing to various Ninth Circuit and related district court cases on point. *See* ECF No. 61 at 2 (collecting cases). He even specified the exact kind of estoppel at issue, namely, "direct benefits estoppel," which occurs when a "nonsignatory knowingly exploits the benefits of [an] agreement and receives benefits flowing directly from the agreement." *Id*. (citing *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1179 (9th Cir. 2014) and *Walters v. Famous Transps., Inc.*, 488 F. Supp. 3d 930, 936 (N.D. Cal. 2020)). As such, the Court will not find that Judge Breyer's legal basis was clearly erroneous here.

And to the extent Corn challenges the factual basis for Judge Breyer's decision, the Court is not persuaded either. Indeed, in perusing the record, the Court notes that Judge Breyer relied on the testimony that both Corn and her husband provided regarding their own shopping behaviors, in which Corn admitted she and her husband share their information with one another in connection with purchases and loyalty programs at Kohl's and other retailers, such as Williams Sonoma. ECF No. 61 at 3 (citing ECF No. 43-15 at 30–33); *see also* ECF No. 43-15 at 19, 26. Judge Breyer even found a quote showing that Corn's husband agreed that "he would allow his wife to connect her purchases to his Rewards Account 'so that [his] household could earn rewards.'" ECF No. 61 at 4–5 (citing ECF No. 44-3). And, to obtain this repository of evidence, Judge Breyer had ordered additional

briefing to ensure he had enough information to render a decision. ECF No. 46. With this record, the Court finds no basis for the argument that Judge Breyer was clearly incorrect and, therefore, it cannot go back "to square one" and reconsider this issue further. *Best v. Shell Oil Co.*, 107 F.3d 544, 546 (7th Cir. 1997) (citing *Christianson*, 486 U.S. at 816–817).

### 4.1.2 Judge Breyer Did Not Make a Finding as to Whether the Arbitration Agreement Was Valid

In contrast, the Court cannot reach the same conclusion as to the issue of whether the arbitration agreement contained in the May 2023 KMA is, in fact, valid. Judge Breyer merely wrote that he was "satisfied that Corn's husband formed a valid contract with Kohl's" and that the "forum selection clause in the contract is enforceable." ECF No. 61 at 2. As a preliminary matter, it is not automatically true that a valid contract indicates that there is a valid arbitration agreement. *Buckeye*, 546 U.S. at 445–46 (noting that "an arbitration provision is severable from the remainder of the contract" (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402–04 (1967)).

More to the point, the main concern of Judge Breyer's order was the forum selection provision, which, as noted above, instructs the parties to litigate in Wisconsin "any disputes . . . that are not subject to arbitration . . . or over any action that seeks to enforce or challenge the enforceability of the Arbitration Agreement or any provision of the Arbitration Agreement or these Terms." May 2023 KMA at 7. By these very words, the door remains open for the parties to hash out in a Wisconsin court the validity of this arbitration provision. In reviewing Judge Breyer's decision, it is clear that he did not reach the issue of whether the arbitration clause is enforceable. For one, Judge Breyer undertook no discussion of unconscionability or

Corn's public policy challenge, despite the parties' briefing on these issues. *See generally* ECF No. 61; *see* ECF No. 50 at 18–20; ECF No. 57 at 17–18. The fact that the parties re-briefed these same issues further supports this view. ECF No. 82 at 13–18; ECF No. 87 at 22–35; ECF No. 88 at 14–20. Thus, because Judge Breyer did not find that the arbitration provision inside the May 2023 KMA was enforceable, the law of the case doctrine does not apply to that question. *Christianson*, 486 U.S. at 817. As such, the Court can now proceed to its own analysis of whether the arbitration agreement was valid, though, to make that assessment, it must first decide whether California or Wisconsin law governs.

### 4.2    Wisconsin Law Governs

It is well-established that a federal court sitting in diversity applies the choice of law rules of the state in which the court sits. *Heiman v. Bimbo Foods Bakeries Distrib. Co.*, 902 F.3d 715, 718 (7th Cir. 2018) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). When a case is transferred, however, the transferee court generally must apply the choice of law rules that the transferor court would have applied had the case not been transferred. *See Anderson v. Aon Corp.*, 614 F.3d 361, 365 (7th Cir. 2010) ("A transfer under § 1404 does not affect the applicable law." (citing *Ferens v. John Deere Co.*, 494 U.S. 516, 523 (1990)). At first glance, then, since Corn originally filed in California, California's choice-of-law principles would seem to apply.

However, as another district court in the Sixth Circuit recently observed, this rule does not apply in cases where "a court has transferred pursuant to a forum selection clause." *CajunLand Pizza, LLC v. Marco's Franchising, LLC*, 513 F. Supp. 801, 807 (N.D. Ohio 2021) (citing *Atl. Marine*

*Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 64 (2013)). The Supreme Court has explained that a contrary rule "would allow a plaintiff to obtain its choice of law merely by filing its complaint in a court other than the one to which the plaintiff agreed." *Id.* (citing *Atl. Marine Const. Co.*, 571 U.S. at 85). Since Judge Breyer transferred the case to this Court based on a forum selection clause that he found bound Corn, and the Court cannot revisit that decision, *see supra* Section 4.1.1, it is apparent that California law does not govern in this instance. Rather, Wisconsin law governs as this Court sits in Wisconsin.

This whole discussion is perhaps beside the point because, in any instance, the language in the parties' agreement[5] provides that Wisconsin law controls here, without the need for any conflict of law analysis. May 2023 Terms at 5 ("THESE TERMS OF USE, AS WELL AS ANY SOLICITATIONS, ADVERTISING, PURCHASES, AND/OR RETURNS SHALL BE GOVERNED BY THE LAWS OF THE STATE OF WISCONSIN, WITHOUT GIVING EFFECT[6] TO ITS CONFLICT OF LAWS PROVISIONS"

---

[5]As noted earlier, there is an important provision that connects the May 2023 KMA to the 2023 Terms. *See supra* note 3. By way of that provision, the choice of law provision in question here is hereby incorporated by reference. *Tacuba v. Baxter Credit Union*, Case No. 21-CV-618-JPS, 2021 WL 4129317, at *2 n.2 (E.D. Wis. Sept. 9, 2021) (citing *Cent. Wis. Elec. Co-Op v. Hoffman*, 890 N.W.2d 48 (Wis. Ct. App. 2016) (recognizing the incorporation by reference doctrine); *R.J. O'Brien & Assocs., Inc. v. Pipkin*, 64 F.3d 257, 260 (7th Cir. 1995) ("A contract, however, need not contain an explicit arbitration clause if it validly incorporates by reference an arbitration clause in another document.").

[6]*See* John F. Coyle, *A Primer on Choice-of-Law Clauses*, TRANSNAT'L LIT. BLOG (Mar. 27, 2022), https://tlblog.org/a-primer-on-choice-of-law-clauses/ (noting that "[a]dding the phrase 'without regard to its conflict of laws rules' makes [explicit] th[e] [otherwise] implicit preference" for the internal law of the chosen jurisdiction). As Professor Coyle notes, parties include this clause to suggest that

(footnote added)); *see also Walls v. VRA Chi. Eleven, LLC*, 344 F. Supp. 3d 932, 947 (N.D. Ill. 2018) (finding that a contractual provision stating that the "laws of the State of Illinois, without giving effect to its choice of law principles" was grounds for the Court to apply Illinois law); *Farmbrooke Fam. Physicians, P.C. v. Cmty. Home Physicians, LLC*, No. 25 C 6597, 2025 WL 3158194, at \*1 (N.D. Ill. Nov. 12, 2025) (applying Michigan law without conducting a choice of law analysis in light of a similar provision). As such, in determining the validity of the arbitration agreement, the Court will apply Wisconsin law.

### 4.3 The Court Must Compel Arbitration Under the Arbitration Agreement

For the reasons set forth below, the Court determines that, under Wisconsin law, the May 2023 KMA, including its arbitration provision, is valid. As a starting point, the Court must accept that Corn's husband's RA was a valid contract that bound Corn, *see supra* Section 4.1.1. ECF No. 61 at 2 (Judge Breyer finding that "Corn's husband formed a *valid contract* with Kohl's" and that it "binds Corn"). The remaining question is, therefore, whether the arbitration provision therein is invalid. *See supra* Section 4.1.2; *see also* ECF No. 82 at 13–18; ECF No. 87 at 22–35; ECF No. 88 at 11–20. Corn has the burden of showing that there is a triable issue of fact concerning whether the arbitration provision of the May 2023 KMA is invalid. *Hoganberry v. Experian Info. Sols., Inc.*, 703 F. Supp. 3d 854, 858 (N.D. Ill. 2023) ("A party seeking to compel arbitration has the initial burden of showing a written agreement to arbitrate. . . . If that initial burden is satisfied, '[the]

---

they want a certain state's law to apply, but not that state's conflict-of-law principles to apply.

Page 15 of 23

Case 2:25-cv-00832-JPS   Filed 03/30/26   Page 15 of 23   Document 90

party opposing a motion to compel arbitration bears the burden of identifying a triable issues of fact' as to whether the parties validly entered into [the] agreement." (citing *A.D. Credit One Bank, N.A.*, 885 F.3d 1054, 1063 (7th Cir. 2018) then quoting *Mohammed v. Uber Techs., Inc.*, 237 F. Supp. 3d 719, 725 (N.D. Ill. 2017))).

Corn has not met that burden because she deploys only California case law to support her arguments that the arbitration agreement is invalid, both as a matter of California public policy and as unconscionable. ECF No. 87 at 23–35; *United States v. Hornbostel*, No. 96-4106, 1997 WL 407706, at *3 (7th Cir. July 17, 1997) (citing *Kerr v. Farley*, 95 F.3d 472, 481 (7th Cir. 1996); *Gagan v. Am. Cablevision, Inc.*, 77 F.3d 951, 965 (7th Cir. 1996); and FED. R. APP. P. 28(a)(6)) (discussing waiver of issue for failure to provide supporting case law or develop a legal argument). While the Court might have considered her unconscionability arguments—despite her failure to cite a single Wisconsin case on this topic[7]—if she had agreed that Wisconsin

---

[7]Technically, Corn cites to one Wisconsin Court of Appeals case to support that the inclusion of a waiver of class-wide relief makes an arbitration agreement unconscionable. ECF No. 87 at 34 (citing *Coady v. Cross Country Bank*, 729 N.W.2d 732, 746–47 (Wis. Ct. App. 2007)). However, *Coady* relied on *Discover Bank v. Superior Court*, 30 Cal. Rptr. 3d 76 (Cal. 2005) for its holding, even though that case was subsequently abrogated, in relevant part, by *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011). Moreover, *Coady*'s discussion of Corn's argument came in the context of the substantive unconscionability, leaving unanswered the question of whether the arbitration provision was procedurally unconscionable under Wisconsin law. *Coady*, 729 N.W.2d at 746–47; *see also Wis. Auto Title Loans, Inc. v. Jones*, 714 N.W.2d 155, 165 (Wis. 2006) (noting that a "quantum" of both substantive and procedural unconscionability is required to invalidate a provision). Corn's reliance on *Coady* does not convince the Court that the arbitration agreement is unconscionable under Wisconsin law.

law and California law were the same, but Corn was adamant that only California law applied. ECF No. 87 at 28 n.15 ("Corn asserts that the issue of whether Kohl's clause unconscionable should be analyzed under California law, rather than Wisconsin law"); *see id.* at 28–35 (discussing California's law as to unconscionability). As a point of comparison, Corn had earlier agreed that there was no "meaningful distinction between California and Wisconsin law" in terms of the direct estoppel analysis. ECF No. 87 at 16 n.9.

The Court appreciates that it is "standard legal practice" to cite "non-binding legal authority . . . for its persuasive value," but this practice is, at most, persuasive only "in the absence of binding legal precedent on the issue in question." *Bar-Meir v. Univ. of Minn.*, No. 10–936 (SRN/JJK), 2012 WL 2402849, at *1 (D. Minn. June 26, 2012). And, in this case, as Kohl's opening brief reveals, there are plenty of Wisconsin cases—and Seventh Circuit cases applying Wisconsin law—that address unconscionability. *See* ECF No. 82 at 12–18. Moreover, the parties in this case are represented, not pro se, meaning that there is little reason to provide an allowance for "failure to cite proper legal authority," particularly in this case where much rises and falls on which state's law is used and where only two jurisdictions are possibly implicated. *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (citation omitted); *see also Villarreal v. Chi. Transit Auth.*, 103 F. App'x 907, 908 (7th Cir. 2004) (dismissing even a pro se claim that used irrelevant authority). The Seventh Circuit itself has refused to perform a party's "legal research and analysis," which this Court would have to do to preserve Corn's challenge to the validity of the arbitration agreement. *Matter of Maurice*, 21 F.3d 767, 774 (7th Cir. 1994) (citing *Pelfresne v. Williams Bay*, 917 F.2d 1017, 1023 (7th Cir. 1990) and *In Re BNT Terminals,*

*Inc.*, 125 B.R. 963, 977–78 (1990)). At the end of the day, the Seventh Circuit has "repeatedly . . . made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by *pertinent authority*, are waived." *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) (emphasis added) (citing *United States v. Brown*, 899 F.2d 677, 679 n.1 (7th Cir. 1990); *United States v. Petitjean*, 883 F.2d 1341, 1349 (7th Cir. 1989); and *United States v. Williams*, 877 F.2d 516, 518–19 (7th Cir. 1989); and FED. R. APP. P. 28(a)(4)). Therefore, the Court is assured that this argument has been waived and will, therefore, hold that the arbitration agreement within the May 2023 KMA is valid.

Corn does not dispute the other two factors here: that her dispute falls within the scope of the arbitration agreement and that she has refused to arbitrate. *Zurich Am. Ins.*, 417 F.3d at 688 (citing 9 U.S.C. § 4 and *Kiefer Specialty*, 174 F.3d at 909–10); *see generally* ECF No. 87. For its part, Kohl's has invoked the applicable terms and conditions, demonstrating that the claims are covered and that Corn has refused to arbitrate. ECF No. 82 at 12–13. Indeed, the record of moving from one court to the next, challenging the arbitration agreement at nearly every turn, belies any notion that the Corn has not refused arbitration. Thus, because all three factors are met here, *see Zurich Am. Ins.*, 417 F.3d at 688, the Court must compel arbitration.

### 4.4 Dismiss or Stay

The final issue in the arbitration inquiry is whether the Court should exercise its discretion to dismiss or stay these proceedings now that arbitration will be compelled. The Supreme Court, however, has recently removed the trial court's discretion in cases where one of the parties requests a stay. *Smith v. Spizzirri*, 601 U.S. 472, 475–76 (2024) ("When a

federal court finds that a dispute is subject to arbitration, and a party has requested a stay of the court proceedings pending arbitration, the court does not have the discretion to dismiss the suit on the basis that all the claims are subject to arbitration."). Here, it is not entirely clear what the parties are requesting. Corn makes no request and fails to discuss any preference regarding a stay or dismissal. *See generally* ECF No. 87. Kohl's argues that the Court should stay proceedings if it does not compel the entirety of Corn's claims to arbitration, ECF No. 82 at 18; it does not, however, explain what it prefers to have happen in a case like this where the Court refers the entire matter to the arbitrator. *See generally id.*; *see generally* ECF No. 88. Erring on the side of caution, the Court will consider Kohl's language as requesting a stay, even though it appears conditional. *See Retzios v. Epic Sys. Corp.*, 126 F.4th 1282, 1285 (7th Cir. 2025) (admonishing a district court for dismissing a case when referring it to arbitration, even though one of the parties requested a stay). Accordingly, the Court will stay these proceedings pending arbitration.

5.     **MOTION TO RESTRICT**

In tandem with her opposition brief, Corn moved to restrict certain documents. ECF No. 86. Corn's motion further indicated that Kohl's does not oppose her requested relief. *Id.* at 2. Regardless of the parties' positions, however, the public maintains an interest in "what goes on at all stages of a judicial proceeding." *Ramos v. Continental Auto. Sys. Inc.*, No. 18-1900-pp, 2020 WL 8617482, at *1 (E.D. Wis. Sept. 3, 2020) (citing *Citizens First Nat'l Bank v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999); and *United States v. Sanford-Brown, Ltd.*, 788 F.3d 696, 713 (7th Cir. 2015), *vacated on other grounds, United States ex rel. Nelson v. Sanford-Brown, Ltd.*, 579 U.S. 924

(2016)). The Court may, therefore, only seal or restrict documents for "good cause." *Id.*

### 5.1 Plaintiff's Documents

With that background, the Court starts with Corn's motion to restrict certain of her own documents, namely her unredacted opposition brief, ECF No. 87-1, and certain portions of deposition testimony, ECF No. 87-4. ECF No. 86 at 2–4. The Court agrees that certain portions of that deposition testimony at issue raise privacy interests that warrant protection from public view, in the absence of judicial reliance, such as those containing Corn and her husband's e-mail address, home address, and other personal data. *See Caldwell v. Bartow*, No. 15-C-293, 2015 WL 3669981, at *1 (E.D. Wis. June 15, 2015) (citing *City of Greenville v. Syngenta Crop Prot., LLC*, 764 F.3d 695, 697–98 (7th Cir. 2014)). Meanwhile, the unredacted opposition brief at ECF No. 87-1 requires further consideration, as redacting that document seems to run contrary to the rule that the matters that form the basis of a judicial decision should remain open to the public, a point Corn herself later acknowledges. ECF No. 86 at 3 (citing *Baxter Int'l, Inc. v. Abbott Lab'ys.*, 297 F.3d 544, 545 (7th Cir. 2002) and *City of Greenville*, 764 F.3d at 697–98). However, the Court does not rely on any of the redacted materials referenced therein to render its decision here. Moreover, the redactions pertain to certain Kohl's internal training procedures as well sensitive information relating to Corn. ECF No. 86 at 2–3. Accordingly, the Court will order the Clerk of Court to keep the documents at ECF 87-4 and ECF No. 87-1 restricted until further order of the Court.

### 5.2 Defendant's Documents

Corn's motion is also directed at exhibits that Kohl's filed in the first instance in this case, but that Corn recently submitted in support of her opposition brief. ECF No. 87 (citing ECF Nos. 87-4, 87-6, 87-8, 87-10, 87-12, 87-14, 87-16, and 87-18). Corn seeks restriction for these documents because they "were previously filed under seal" in this case. ECF No. 86 at 4. Indeed, Judge Breyer entered a protective order, ECF No. 34, as to certain confidential information, a characterization that is certainly apt to each of these items. In that regard, the first set of documents deserving of protection relate to certain internal training documents, namely ECF Nos. 87-6, 87-10, 87-12 and 87-18; *see also* ECF No. 86 at 4. Meanwhile, the unredacted deposition transcripts at 87-4, 87-8, and 87-14, 87-16 also deserve protection because they contain the same kind of internal information. *See* ECF No. 86 at 4. For the foregoing reasons, the Court will order the Clerk of Court to maintain ECF Nos. 87-6, 87-8, 87-10, 87-10, 87-12, 87-14, 87-16, and 87-18 as restricted until further order of the Court. Accordingly, Corn's motion to restrict, ECF No. 86, is granted in its entirety.

### 6. CONCLUSION

Judge Breyer already found that Corn was bound to the arbitration agreement, and Corn has not carried her burden to show that the arbitration agreement is invalid. Since Corn only reasonably disputes whether the agreement is valid, and not whether the dispute here falls inside the scope of the agreement, or whether she has refused to arbitrate, the Court must compel arbitration. Exercising caution as to Kohl's request, the Court construes it as a request for a stay, which the Court has no discretion to deny. Therefore, the Court will grant Kohl's motion to compel arbitration and stay all proceedings in this case. The Court will administratively close

this case while the underlying dispute is being arbitrated. Within two weeks of the completion of the arbitration proceedings, Plaintiff must file a status report. If Plaintiff fails to do so, Kohl's may alert the Court and this case will be dismissed without prejudice.

Finally, the Court will grant Corn's motion to restrict certain documents, ECF No. 86, in its entirety due to the sensitive personal information and otherwise confidential business information contained therein.

Accordingly,

**IT IS ORDERED** that Defendants Kohl's Corporation and Kohl's, Inc.'s motion to compel arbitration, ECF No. 81, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff Laura Corn's motion to restrict certain documents, ECF No. 86, be and the same is hereby **GRANTED**; the Clerk of Court shall keep under restriction the documents at ECF No. 87-1, 87-4, 87-6, 87-8, 87-10, 87-12, 87-14, 87-16, and 87-18;

**IT IS FURTHER ORDERED** that Plaintiff Laura Corn is **COMPELLED** to arbitrate her claims in this action with Defendants Kohl's Corporation and Kohl's, Inc.;

**IT IS FURTHER ORDERED** that this action be and the same is hereby **STAYED** pending the outcome of the parties' arbitration;

**IT IS FURTHER ORDERED** that the Clerk of Court **ADMINISTRATIVELY CLOSE** this case; and

**IT IS FURTHER ORDERED** that Plaintiff Laura Corn shall **FILE** a status report within two (2) weeks of the ultimate outcome of the parties' arbitration proceedings; failure to timely do so will result in dismissal of this action without prejudice for failure to prosecute.

Dated at Milwaukee, Wisconsin, this 30th day of March, 2026.

BY THE COURT:

_____

J. P. Stadtmueller
U.S. District Judge